**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Concord Servicing Corporation, | No. CV-12-00438-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| JPMorgan Chase Bank, N.A., et al., | |
| Defendants. | |

Pending before the Court are Defendant's Motion for Summary Judgment (Doc. 147), the parties' Stipulated Motion for Leave to File Under Seal (Doc. 149), and Plaintiff's Motion for Partial Summary Judgment (Doc. 145). The Court now rules on the motions.

## I.    Background

Plaintiff Concord Servicing Corporation ("Concord") is a loan serving provider. (Doc. 146-1 at 2). During January 2009 to February 2011, Concord was the loan servicer for Groupo Costamex, S.A. de C.V.; Holiday Club Management Co., Ltd.; Holiday Clubs Ltd.; Resort Interval, Inc.; Royal Experience, S.A. de C.V.; and Travel Experience, S.A. de C.V. (collectively, "Costamex"). (*Id.*) Costamex is in the business of marketing and selling timeshare memberships. (*Id.* at 3). As the loan servicer for Costamex, Concord processed payments and refunds to Costamex's customers. (*Id.*)

In 2003, Concord opened a bank account (the "Refund Account") with Defendant JPMorgan Chase Bank, N.A. ("Chase")'s predecessor Bank One. (*Id.*) Concord draws checks on the Refund Account when, upon the instructions of Concord's customers, it

issues refunds to its customers' clients. (*Id.*) During January 2009 to February 2011, Victor Aguilar was an employee of Costamex and the primary contact for Concord with respect to its servicing of Costamex's accounts. (*Id.*) Costamex authorized Aguilar to instruct Concord to issue refunds to Costamex's customers. (*Id.* at 3; Doc. 157 at 2). Concord never issued a refund check to a customer of Costamex except when Costamex instructed Concord to do so. (*Id.* at 3). Concord understood Aguilar to be the Costamex employee with authority to authorize the issuance of Costamex customer refunds. (Doc. 148 ¶ 8; Doc. 158 ¶ 8).

Between January 2009 and February 2011, Aguilar instructed Concord to issue the 221 refund checks at issue (the "Refund Checks") to Costamex customers. (Doc. 146 at 3; Doc. 157 at 3). Aguilar instructed Concord to issue the Refund Checks and send them directly to him instead of the customers because Aguilar needed to attach "additional paperwork" to be provided to the customers. (Doc. 146-1 at 32; Doc. 148-2 at 16). Aguilar supplied the names of the payees and dollar amounts for each of the Refund Checks. (Doc. 148 ¶ 10; Doc. 158 ¶ 10). Upon Aguilar's instruction and keeping in line with its role as a servicer, Concord issued the Refund Checks without determining whether a refund was actually owed to the payees. (Doc. 148 ¶ 11; Doc. 158 ¶ 11). In fact, Concord could not refuse to comply with Costamex's instructions to issue refund checks to Costamex's customers. (Doc. 158-1 at 12).

Concord and Costamex each maintained separate systems to track transactions on Costamex's customer accounts. (Doc. 148 ¶ 14; Doc. 158 ¶ 14). Costamex provided Concord with daily spreadsheets of transactions initiated on Costamex's system and Concord provided Costamex with daily information on transactions Concord processed on behalf of Costamex (including refund check transactions). (Doc. 148 ¶ 15; Doc. 158 ¶ 14). Aguilar had access to Concord's computer system to compare Concord's data with Costamex's and verify that the systems accurately reflected Costamex's transactions. (Doc. 158-1 at 12). Concord does not know if Aguilar manipulated Costamex's system to hide his check fraud. (Doc. 148 ¶ 18; Doc. 158 ¶ 18).

1    Chase is without knowledge as to whether the Refund Checks were fraudulently
2    indorsed, (Doc. 157 ¶ 14), but according to Concord, the Refund Checks were endorsed
3    by someone other than their named payees and were either cashed or deposited at
4    Mexican banks, (Doc. 146 ¶ 14). Concord offers the testimony of one hundred payees
5    named on the Refund Checks, each of whom testifies that he or she did not request or
6    indorse the corresponding check. *See* (Doc. 146 at 5-19). It is undisputed that the Refund
7    Checks were accepted at depositary banks for payment and subsequently presented to
8    Chase for payment in the ordinary course of banking. (Doc. 148 ¶ 19). Chase processed
9    the Refund Checks and posted them to Concord's account. (*Id.* ¶¶ 20-22). At the time it
10   paid the Refund Checks, Chase had no knowledge that any of the indorsements on the
11   Refund Checks were unauthorized. (*Id.* ¶ 23).

12   During the July 2009 to February 2011 time period when the Refund Checks were
13   drawn, Chase provided monthly account statements to Concord. (*Id.* ¶ 29). These
14   statements identified all checks paid against the Refund Account and included images of
15   both sides of every check. (*Id.* ¶ 29). This information was also available to Concord
16   through online banking services. (*Id.* ¶¶ 30-31). Although Concord reconciled its monthly
17   statements for the Refund Account, it never reviewed copies of its paid checks. (*Id.* ¶ 32).

18   In February 2011, Concord reviewed some of the Refund Checks and discovered
19   that although the checks were payable to different Costamex customers, they had been
20   indorsed and deposited in a single Mexican bank account. (*Id.* ¶ 36). In January 2012,
21   Concord filed this lawsuit against Chase and subsequently informed Chase, for the first
22   time, of the particular checks that it alleged Chase had improperly paid. (*Id.* ¶¶ 42-43).

23   **II.    Motions for Summary Judgment**

24   Chase moves for summary judgment on Concord's claims, asserting that both
25   Uniform Commercial Code ("UCC") section 3-405 as well as the parties' deposit
26   agreement preclude Chase from being liable for the unauthorized checks.[1] (Doc. 147 at

27
28   ───────────────
     [1] Chase's motion violates Local Rule of Civil Procedure 56.1(e) because it fails to
     cite to the paragraphs in Chase's statement of facts supporting assertions for all material
     facts relied upon in the motion. *See* LRCiv 56.1(e); (Doc. 147 at 2) ("Chase respectfully

1). Concord moves for partial summary judgment on its claims as to one hundred of the 221 checks, arguing that Chase improperly charged its account for checks that were not properly payable. (Doc. 145 at 1, 7).

### A.   Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare

---

refers the Court to the SOF for discussion of all relevant facts."). Failure to discuss the necessary facts in the motion is often tantamount to an unauthorized page limit extension, and is not looked upon favorably by the Court.

1    assertions, standing alone, are insufficient to create a material issue of fact and defeat a

2    motion for summary judgment. *Id.* at 247–48. However, in the summary judgment

3    context, the Court construes all disputed facts in the light most favorable to the non-

4    moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

5        **B.    UCC § 3-405**

6            **1.    Legal Standard**

7        Generally, a bank may charge against its customer's account only those items that

8    are properly payable. *See* A.R.S. § 47-4401(A) & cmt. 1. A check bearing a forged

9    indorsement is not properly payable. *Id.* cmt. 1. However, UCC § 3-405 provides an

10   exception under which a check bearing a fraudulent indorsement may nonetheless

11   properly payable. *See* A.R.S. § 47-3405. Section 3-405 provides:

12           B. For the purpose of determining the rights and liabilities of
             a person who, in good faith, pays an instrument or takes it for
13           value or for collection, if an employer entrusted an employee
             with responsibility with respect to the instrument and the
14           employee or a person acting in concert with the employee
             makes a fraudulent indorsement of the instrument, the
15           indorsement is effective as the indorsement of the person to
             whom the instrument is payable if it is made in the name of
16           that person. If the person paying the instrument or taking it
             for value or for collection fails to exercise ordinary care in
17           paying or taking the instrument and that failure substantially
             contributes to loss resulting from the fraud, the person
18           bearing the loss may recover from the person failing to
             exercise ordinary care to the extent the failure to exercise
19           ordinary care contributed to the loss.

20           C. Under subsection B, an indorsement is made in the name
             of the person to whom an instrument is payable if:
21
             1. It is made in a name substantially similar to the name of
22           that person; or . . . .

23
     A.R.S. § 47-3405(B), (C). The terms "employee," "fraudulent indorsement," and
24
     "responsibility" are defined as follows:
25
             1. "Employee" includes an independent contractor and
26           employee of an independent contractor retained by the
             employer.
27
             2. "Fraudulent indorsement" means:
28
             * * *

(b) In the case of an instrument with respect to which the employer is the issuer, a forged indorsement purporting to be that of the person identified as payee.

3. "Responsibility" with respect to instruments means authority to:

* * *

(d) Supply information determining the names or addresses of payees of instruments to be issued in the name of the employer;

(e) Control the disposition of instruments to be issued in the name of the employer; or

(f) Act otherwise with respect to instruments in a responsible capacity.

A.R.S. § 47-3405(A).

The bank asserting the defense of UCC § 3-405 "bears the initial burden of proving that an employer entrusted an employee with 'responsibility' for the instrument in question" as defined in § 3-405(A)(3). *San Tan Irrigation Dist. v. Wells Fargo Bank*, 3 P.3d 1113, 1117 ¶ 15 (Ariz. Ct. App. 2000). "If the bank proves the employer entrusted the employee with responsibility, and also proves that it acted in 'good faith,' the loss from the transaction is shifted from the bank to the employer." *Id.* ¶ 16. However, the employer can share the loss with the bank if the employer proves that the bank failed to exercise ordinary care with respect to the transaction. *Id.*; *see also* A.R.S. § 47-3405(B).

"Section 3-405 is based on the belief that the employer is in a far better position to avoid the loss by care in choosing employees, in supervising them, and in adopting other measures to prevent forged indorsements on instruments payable to the employer or fraud in the issuance of instruments in the name of the employer." A.R.S. § 47-3405 cmt. 1. This comports with the UCC's policy that "the loss resulting from a forged indorsement should fall upon the party best able to prevent it." *Lewis v. Tel. Emps. Credit Union*, 87 F.3d 1537, 1550 n.12 (9th Cir. 1996) (quoting *Intelogic Trace Texcom Grp., Inc. v. Merchants Nat'l Bank*, 626 N.E.2d 839, 840 (N.D. Ind. 1993)).

2.    **Analysis**

Concord argues that Chase is not entitled to claim the defense of UCC § 3-405 because Chase has not proven that (1) Aguilar was an agent or employee of Concord, (2) Concord entrusted Aguilar with responsibility for issuing the Refund Checks, and (3) Chase paid the Refund Checks in good faith.

a.    **Aguilar's Status as Agent or Employee**

Because UCC § 3-405 applies only if an employee makes a fraudulent indorsement of the instrument, Chase bears the burden of proving that Aguilar was Concord's "employee" as that term is defined in the statute. *See San Tan*, 3 P.3d at 1117 ¶ 15. Concord argues that no employment relationship existed between it and Aguilar, and Aguilar did not perform any services for Concord, only for Costamex. (Doc.159 at 11).

The facts of this case are strikingly similar to those of *Guardian Life Insurance Company of America v. Chemical Bank*, 666 N.Y.S.2d 897 (Sup. Ct. 1997). In *Guardian Life*, the insurance agent and wrongdoer, Rutberg, worked with a particular insurance agency that had issued policies underwritten by Guardian Life Insurance Company of American ("Guardian"). 666 N.Y.S.2d at 898. Rutberg's scheme was to telephone Guardian and request the issuance of a check for a life insurance loan or policy dividend on a named policy holder's account, knowing that the customer had not requested any such check. *Id.* Guardian issued checks and sent them not to the customers, but to Rutberg, who subsequently forged the customers' indorsements and cashed the checks. *Id.*

Guardian sued its drawee bank to recover the proceeds of the checks, arguing the bank improperly paid on forged indorsements. *Id.* Although the parties disputed whether Rutberg had been an employee or agent of Guardian within the meaning of insurance law, the court found that the operative question was instead "whether Guardian was in the best position to prevent the loss." *Id.* at 899. Accordingly, the court rejected a formalistic analysis of agency and concluded that Rutberg was Guardian's agent for purposes of § 3-

405:

> Rutberg was a sufficient agent of Guardian that it relied on him for the issuance of checks, without any documentation from the policy holder [or any other agencies or anyone else at Rutberg's agency]. The checks were concededly drawn by Guardian in the policy holder's name solely at Rutberg's oral request. Guardian could have, but did not, exercise reasonable control over the checks by having them sent directly to the registered address of the policy holder or by sending the policy holder a notice that a check had been sent to the "Agent of Record." Patently Guardian was in the best position to prevent the losses by its practices and supervision of the persons who directed the authorization of the checks . . . .

*Id.* at 899-900.

The facts of the present case are indistinguishable from those in *Guardian Life*.[2] Here, it is undisputed that Aguilar's instructions to Concord were sufficient to cause Concord to issue checks according to payees and amounts supplied by Aguilar. Concord could have exercised reasonable control over the Refund Checks by sending them directly to the named payees, but failed to do so. Another instructive case is *LifeUSA Insurance Company v. Continental Bank, N.A.*, 1996 WL 18974, at *1, 6 (N.D. Ill. Jan. 18, 1996), in which the court concluded that an insurance agent who had falsified an annuity application to an underwriter for the purpose of obtaining and fraudulently indorsing a refund check was an agent for purposes of § 3-405. There, the court relied upon a written agency agreement as well as other evidence to conclude that the drawer had authorized the agent to supply it "with the information it needed to prepare a refund check in the event an insured wished to cancel the policy." 1996 WL 18974, at *6.

Concord argues, however, that Aguilar could not have been its agent or employee because Aguilar was an employee of Costamex, not Concord. (Doc. 159 at 11). But as in *Guardian Life*, Aguilar's status as an employee (or agent) of a non-party to the issuance

---

[2] Although Concord attempts to distinguish *Guardian Life* as a product of the special relationship between an insurance agent, broker, and underwriter, the court in that case explicitly rejected any such distinction: "The court need not resolve the insurance law question, . . . for the issues posed by the UCC do not involve what the responsibilities of the parties were with respect to the placing of insurance and the entitlement to commission." 666 N.Y.S.2d at 899.

and negotiation of the Refund Checks does not preclude him from also serving as an agent to Concord for purposes of § 3-405. As one treatise explains:

> No distinction should be made in terms of whether the agent or employee is a general or special agent or employee, or is a full-time or temporary employee, or is a borrowed employee, or an employee provided by a service agency. The only significant element is whether the drawer had authorized the particular person to prepare the instrument in question or supply the information from which the commercial paper could be prepared.

> It is not essential that the agent involved in the impostor situation be on the payroll of the drawer as long as the agent is in fact entrusted by the drawer company with taking the information from the drawer's incoming goods department to its bookkeeping department, on the basis of which information the bookkeeping department prepares checks, which it then entrusts to the agent for delivery to the payees, the "agent" supplying false information of goods not actually received and then forging the names of the payees of the checks entrusted to the agent for delivery to the payees.

6 Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 3-405:112 (3d. ed. 2013). Thus, Aguilar's status as a person authorized by Concord (through its relationship with Costamex) to supply the information for Concord's preparation of checks is sufficient to render him an agent for purposes of § 3-405.[3] As an agent of Concord, Aguilar was an "employee" of Concord within the particular meaning of that term as defined in § 3-405.

### b.   Aguilar's Responsibility for the Refund Checks

To succeed on its § 3-405 defense, Chase must also prove that Concord entrusted Aguilar with responsibility with respect to the Refund Checks. *See* A.R.S. § 47-3405(B). Because "responsibility" as defined in § 3-405 includes "[supplying] information determining the names or addresses of payees of instruments to be issued in the name of the employer" and "[controlling] the disposition of instruments to be issued in the name of the employer," Chase has clearly met its burden of proof on this element. The

---

[3] The Court finds Chase's citations to *Witten Productions, Inc. v. Republic Bank & Trust Co.*, 401 S.E.2d 388 (N.C. Ct. App. 1991) and *Thompson Maple Products, Inc. v. Citizens Nat'l Bank of Corry*, 234 A.2d 32 (Pa. Super. Ct. 1967) unpersuasive. Therefore, the Court need not address Concord's objections to those cases. *See* (Doc. 159 at 12).

1   undisputed evidence shows that Concord allowed Aguilar to supply the names and

2   addresses of the payees as well as the dollar amounts of the Refund Checks. Concord's

3   argument to the contrary (Doc. 159 at 13) is wholly unsupported.

4               c.     **Chase's Good Faith**

5       Finally, Chase must also prove that it paid the Refund Checks in good faith. *See*

6   A.R.S. § 47-3405(B). Good faith is defined as, for purposes of UCC Article 3, as

7   "honesty in fact and the observance of reasonable commercial standards of fair dealing."

8   A.R.S. § 47-3103(A)(4). Concord does not challenge whether Chase observed reasonable

9   commercial standards of fair dealing but argues that because "Chase includes no

10  discussion of the honesty in fact component in its analysis," Chase fails to establish that it

11  paid the Refund Checks in good faith.[4] (Doc. 159 at 14).

12      "Honesty in fact" under UCC Article 3 "is tested by a subjective standard,

13  inquiring into the actual state of mind of the party." *San Tan*, 3 P.3d at 1117 ¶ 13.

14  Honesty in fact requires only "a pure heart and an empty head." *First Interstate Bank of

15  Or., N.A. v. Wilkerson*, 876 P.2d 326, 330 (Or. Ct. App. 1994). Thus, a drawer acts with

16  honesty in fact when it pays a check believing it to be properly payable. *See Me. Family

17  Fed. Credit Union v. Sun Life Assurance Co. of Can.*, 1999 ME 43 ¶¶ 18-23, 727 A.2d

18  335, 340-42 (1999) (discussing honesty in fact in the context of evolving requirements

19  for holder in due course status).

20      Concord's assertion that Chase has failed to prove honesty in fact is at best

21  disingenuous because Chase offered undisputed evidence that at the time it paid the

22  Refund Checks it had no knowledge that the indorsements were unauthorized. (Doc. 148

23  ¶ 23; Doc. 158 ¶ 23). Concord offers no controverting evidence on this point.

24  Accordingly, Chase has proven that it acted with honesty in fact when it paid the Refund

---

26      [4] The Court nonetheless concludes that Chase observed reasonable commercial
27  standards of fair dealing. *See Scott D. Leibling, P.C. v. Mellon PSFS (NJ) Nat'l Ass'n*,
    710 A.2d 1067, 1071-72 (N.J. Super. Ct. Law Div. 1998) (computerized check
    processing system followed reasonable commercial standards); *Guardian Life Ins. Co. of
28  Am. v. Weisman*, 223 F.3d 229, 233-35 (3d Cir. 2000) (drawee bank has no duty to
    review payee indorsements).

Checks.

### 3.   Conclusion

Because Chase has established the elements of its UCC § 3-405 defense, it is not liable to Concord for its payment of the Refund Checks. Concord entrusted Aguilar, as an employee for purposes of § 3-405, with responsibility for the Refund Checks when it allowed Aguilar to instruct Concord to issue checks on behalf of Costamex's customers. Chase paid the fraudulently-indorsed Refund Checks in good faith because it had no knowledge that the indorsements were fraudulent and its observance of reasonable commercial standards of fair dealing did not mandate that it review the payee indorsements. Consequently, Aguilar's fraudulent indorsements were as effective as if made by the payees of the Refund Checks themselves. *See* A.R.S. § 47-3405(B).

Because the Refund Checks had effective indorsements pursuant to § 3-405, they were properly payable and as properly payable instruments, Chase was entitled to charge against Concord's account for their payment.[5] *See* A.R.S. § 47-4401(A). Consequently, Concord's claim against Chase for wrongful payment of the 221 Refund Checks fails as a matter of law and Chase is entitled to summary judgment.[6] For this reason, the Court

---

[5] At oral argument, Concord cited *City of Phoenix v. Great Western Bank & Trust*, 712 P.2d 966 (Ariz. Ct. App. 1985) for the proposition that a bank is required to recredit its customer's account for the amount of checks paid but not properly payable. *City of Phoenix* indeed recites this general proposition, but only before discussing the exception to this rule for fictitious payees. *See* 712 P.2d at 969. The court ultimately affirmed the trial court's grant of summary judgment in favor of the bank. *See id.* at 974. Thus, to the extent *City of Phoenix* is germane, it fails to support Concord's argument that Chase must recredit Concord for the Refund Checks.

[6] Concord makes a curious argument that evinces a misunderstanding of the fundamentals of summary judgment procedure. Namely, Concord argues that its motion should be granted because Chase failed to demonstrate that Concord is "not entitled to judgment as a matter of law" or that a genuine issue of material fact existed in response to Concord's statement of facts. (Doc. 161 at 1-2, 5). Concord attempts to separate its claim under A.R.S. § 47-4401 from the UCC § 3-405 defense of A.R.S. § 47-3405. (*Id.* at 2). Incredibly, Concord implies that the Court could grant *both* its motion for partial summary judgment and Chase's motion for summary judgment because "Chase's belief that it might establish the applicability of those defenses which . . . are the subject of Chase's own motion for summary judgment, does not preclude the granting of [Concord's] Motion." (*Id.*) Concord accuses Chase of "erroneously conflat[ing] its burden as the non-moving party" with that of the moving party. (*Id.*)

Concord later repeats this argument: "Because [Concord's] Motion concerns only

- 11 -

need not address the parties' remaining arguments.

## III.   Stipulation to Seal

The parties have stipulated to seal portions of Chase's Motion for Summary Judgment and supporting statement of facts pertaining to a confidential settlement agreement between Concord and Costamex regarding the Refund Checks. (Doc. 149). The Court has not relied upon any of the sealed material in ruling on the parties' motions. Moreover, for the reasons discussed earlier in this Order, the Court finds that the redacted portion of Chase's Motion for Summary Judgment is sufficient to support an entry of judgment for Chase. Accordingly, the Court will deny the stipulation.

## IV.   Conclusion

For the foregoing reasons,

/

/

/

/

/

/

/

/

/

/

---

Concord's claim against Chase under A.R.S. § 47-4401, Chase's claim that one or more Chase defenses preclude Concord's claim or limit Concord's damages is irrelevant. Chase, as the <u>non-moving party</u>, has failed to meet its burden of coming forward with evidence from which a jury could reasonably render a verdict in its favor on Concord's claim against it." (*Id.* at 5) (emphasis in original).

Thus, under Concord's view of summary judgment, the moving party apparently has the right to select which statutes are at issue and may prohibit the non-moving party from raising relevant and dispositive legal authorities not mentioned in the moving party's arguments. This is not the case. If Chase's defenses are valid, then Concord is not entitled to judgment as a matter of law regardless of whether there is a genuine issue of material fact. Chase's defenses are both relevant and dispositive of this case, and it is Concord, not Chase, who errs in applying the summary judgment standard.

1    **IT IS ORDERED** that Stipulated Motion for Leave to File Under Seal (Doc. 149)

2    is denied. The lodged sealed filings (Docs. 150 and 151) are stricken but shall remain

3    under seal. The Court has not considered the sealed filings (Docs. 150 and 151) in

4    making its determination.

5    **IT IS FURTHER ORDERED** granting Defendant's Motion for Summary

6    Judgment (Doc. 147).

7    **IT IS FURTHER ORDERED** denying Plaintiff's Motion for Partial Summary

8    Judgment (Doc. 145).

9    **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment

10   for Defendant and terminate this case.

11   Dated this 24th day of June, 2014.

12

13

14

15   _____

     James A. Teilborg

16   Senior United States District Judge

17

18

19

20

21

22

23

24

25

26

27

28